**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WHITE OF DUBLIN, LLC.,** | : | |
| | : | **Case No. 2:13-CV-120** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **AFTER THE RING, LLC.,** | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiff White of Dublin, LLC.'s ("White of Dublin")

Motion for a Temporary Restraining Order And Preliminary Injunction ("Motion") (Doc. 9),

filed on March 6, 2013.  Following a Local Rule 65.1 Conference on March 7, 2013, the Court

issued a Temporary Restraining Order on March 8, 2013.  A preliminary injunction hearing was

held on March 27, 2013.  For the reasons stated herein, Plaintiff's Motion for a Preliminary

Injunction is **GRANTED IN PART and DENIED IN PART**.

### II. BACKGROUND

Plaintiff, White of Dublin, is a bridal boutique that operates a single store in Dublin, OH.

White of Dublin first advertised its services under that name in May 2011 and opened at its

current location in October 2011.  According to the Verified Complaint, Plaintiff's business

consists of "promoting and selling designer wedding gowns, eveningwear, mother-of-the-bride

attire, mother-of-the-groom attire, bridesmaids' attire, flower-girl dresses, related accessories and

alteration services." *Verified Complaint*, Doc. 1 at ¶ 8.

In December 2012, Plaintiff became aware that Defendant, After the Ring, planned to open a bridal boutique offering substantially similar services at a location roughly 500 meters from White of Dublin's store.  There is no question that Plaintiff and Defendant are direct competitors.  After the Ring first organized as an LLC, under Ohio law, in February 2010.  In March 2010, After the Ring registered the name "The White Dress Co." in Ohio, more than one year prior to Plaintiff using the name "White of Dublin."  *Id.* at ¶ 25.  Also in 2010, Defendant attempted to rent space in the shopping center where Plaintiff is currently located, but was unable to secure the necessary start-up capital.  *Defendant's Affidavit*, Doc. 16-1 at 1.  Defendant eventually opened in a nearby location as "The White Dress Co." on March 23, 2013.  *Id.* at ¶ 21.  Plaintiff produced approximately one dozen affidavits from people who stated they were confused regarding the distinct identities of Plaintiff's and Defendant's businesses.

On March 7, 2013, this Court held a Local Rule 65.1 Conference on Plaintiff's Motion for Temporary Restraining Order (Doc. 9).  Following the conference, the Court issued an Order granting in part and denying in part Plaintiff's Motion.  Doc. 13.  The Court enjoined Defendant from using its stylized mark of "The White Dress Co.," finding it too closely resembled that of "White of Dublin."  *Id.*  The Court denied Plaintiff's request to enjoin Defendant from using the non-stylized mark, "The White Dress Co.," preliminarily finding that since it was not likely to cause confusion, Plaintiff had failed to demonstrate an irreparable injury.  *Id.*  On March 27, 2013, the Court held a subsequent hearing on the Motion for Preliminary Injunction.  The Motion has been fully briefed and is ripe for adjudication.

### III. STANDARD OF REVIEW

A preliminary injunction is a remedy designed to preserve the status between the parties pending a trial on the merits.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  When

determining whether to grant a preliminary injunction, the Court balances the following four factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). These factors are to be balanced against one another other and should not be considered prerequisites to the grant of a preliminary injunction. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). As an extraordinary remedy, a preliminary injunction is to be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

## IV. LAW & ANALYSIS

### A. Plaintiff's Mark is Not Inherently Distinctive

Plaintiff's Complaint states the following four claims: (1) Unfair Competition under 15 U.S.C. § 1125(a); (2) Deceptive Trade Practices under ORC §4165.01 *et seq.*; (3) Ohio Common Law Trademark Infringement; and (4) Ohio Common Law Unfair Competition. Specifically, Plaintiff alleges Defendant's use of the name "The White Dress Co." and its associated marks will mislead and confuse consumers seeking "White of Dublin," thereby injuring Plaintiff's trade and reputation. Since the first prong of the injunctive relief analysis is "likelihood of success on the merits, the primary question before this Court, then, is whether Defendant's mark, "The White Dress Co.," infringes Plaintiff's "White of Dublin" mark.

A mark is only protectable if it is sufficiently distinctive. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005). There are five levels of a mark's distinctiveness recognized

by federal courts, of which three "are inherently distinctive and are protectable so long as the putative owner has actually used the mark[:]" (1) suggestive; (2) arbitrary; and (3) fanciful.  *Id*. Plaintiff does not contend that its mark is arbitrary or fanciful, designations which offer the most protection, but Plaintiff argues the mark is "suggestive."  *Plaintiff's Motion*, Doc. 9 at 13.  A suggestive mark, using a definition originally borrowed from the Seventh Circuit, "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods."  *Id*. at n. 5 (quoting *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984).[1]  In elaborating on how to determine whether a mark is suggestive, the Fourth Circuit has held "[s]uggestive marks connote, *without describing*, some quality, ingredient, or characteristic of the product."  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) (emphasis added).  Plaintiff relies in part on *Wynn Oil Co. v. Thomas*, 839 F.2d 1139 (6th Cir. 1988), quoting from a note in which the Sixth Circuit sheds more light on the distinctiveness inquiry, stating that "[t]he significant factor [in determining whether a mark is sufficiently distinctive to merit protection] is not whether the word itself is common, but whether the way the word *is used in a particular context is unique enough to warrant trademark protection*." *Id*. at n. 4 (emphasis added).  In *Wynn*, the Court held the word "CLASSIC" to be a suggestive trademark when used by a car wash franchise, observing that "the term CLASSIC . . . is designed to make the consumer think of the classic cars of the past, and not that they will somehow receive a classic wash."  *Id*. at 1190.  More significant still, the "CLASSIC" mark in *Wynn* had been registered

---

[1] Although Plaintiff refers to that quotation as the "imagination test," the Sixth Circuit has not styled the inquiry as a test.  In the *Induct-O-Matic Corp.* case, the Sixth Circuit borrowed the language regarding "imagination" from a Seventh Circuit decision, *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977), as a means of offering guidance in distinguishing between the five levels of a mark's distinctiveness.

with the United States Patent and Trademark Office, which constituted prima facie evidence of an exclusive right to use the mark in question.  *Id*.

The common thread in all these cases is that for a term to be found "suggestive" it should not describe the object or service.  Here, the word "white" in Plaintiff's mark describes the bridal gowns which Plaintiff sells, the core of its business.[2]  In the United States, "white" is the color most associated with weddings, and probably the word most associated with weddings.[3]  Today, the very phrase "white wedding" is idiomatic.  The use of the word "white" is far from "unique" in the "particular context" of bridal attire "to warrant trademark protection," to borrow the words of the Sixth Circuit in *Wynn*.  Rather than unique, such usage is ubiquitous.  Unlike the washing of the car itself in *Wynn*, which was not "CLASSIC," the dresses sold by Plaintiff and Defendant are generally very much "white."

Although neither party cited to case law which addressed whether the *name* of a color was a protectable trademark, the Court takes notice of two such cases from the Second Circuit, both of which held the name of a color to be descriptive and not protectable.  In *Clairol Inc. v. Gillete Co.*, 389 F.2d 264 (2d Cir. 1968), the plaintiff sued to protect its trademark of the phrase "Innocent Beige."  The Second Circuit, holding against the plaintiff, noted:

---

[2] The Court is mindful of the fact that Plaintiff, as a "couture bridal boutique," sells goods in addition to bridal gowns, but Plaintiff's statements make clear that the core of its business is selling bridal gowns.  Plaintiff represented at the hearing that at least "80-85%" of the bridal gowns it sells are white or a shade of white.

[3] Plaintiff's lengthy list of marks that have been found "suggestive" does not include any example of a phrase which so clearly describes and is so associated with the good or service in question as "white" so describes and is associated with weddings and bridal attire.  The following hypothetical examples are far more analogous.  A ruby vendor could not trademark the word "red" to prevent its competitors from using it, nor could a citrus fruit vendor so trademark the word "orange."

Since the Court considers full marks, rather than pieces thereof, the following hypothetical examples better illustrate the issue.  "Red of Ravenna" would not be inherently distinctive enough as a ruby vendor to be protectable if ruby vendor "The Red Ruby Co." chose to open nearby.  Red simply describes the rubies sold, even if some are closer to maroon or scarlet.  Similarly, citrus fruit vendor, "Orange of Florida" would not be inherently distinctive such that it could prevent another citrus vendor from opening as "The Orange Fruit Co."  "Orange" describes the citrus fruits sold.  People associate the word "orange" with citrus fruit.  The fact that citrus fruit vendors may also happen to sell yellow or pink grapefruits would not render the "Orange of Florida" mark suggestive.

> Were the term for which Clairol seeks protection 'Beige,' rather than 'Innocent Beige,' the *invalidity of the term as a trademark would of course be patent*. The word *beige is such a descriptive word* as will receive less protection than a fanciful or coined word, on the familiar principle that words in the general vocabulary which all can use to describe products or services should not be unduly limited.

*Id*. at 269.  (emphasis added)  Although the facts of the cases are distinguishable, this Court finds the *Clairol Inc*. reasoning persuasive here.  The Second Circuit later relied on that decision in *W. Pub. Co., Inc. v. Rose Art Indus., Inc.*, holding:

> The *names of colors, because they are merely descriptive*, *generally may not be protected under trademark laws*.  The law does not favor efforts to monopolize a common, frequently used word.  While some trademark protection may be available solely to prevent consumer confusion when a descriptive word has acquired secondary meaning indicative of origin, nevertheless plaintiff may not appropriate to itself the exclusive use of the word "golden" in connection with every children's book toy or game.

733 F.Supp. 698, 699-700 (S.D.N.Y. 1990), *aff'd*. 910 F.2d 57 (2d Cir. 1990) (emphasis added).

The Court also notes that a cursory internet search conducted by entering the terms "white," "bridal," and "boutique" into Google returns results which include dozens of bridal boutiques containing the word "white" in their names.  There is, for instance: "White on Daniel Island" in South Carolina; "In White" in Pennsylvania; "White Bridal Boutique" in British Columbia; "Ivory & White" in Alabama; "The White Dress" in Michigan; and "Something White" in Cleveland, Ohio.  Furthermore, the Court notes, as revealed by the same internet search which produced the previous list, there is a line of bridal gowns made by clothier Vera Wang simply called "White."  Surely, Congress has not passed federal trademark laws intending that all these vendors, and the dozens more similarly named, should be potentially liable for infringing the trademark of the others.

Plaintiff makes much of its evidence of actual confusion of the respective marks by multiple people, including at least one potential customer.  That evidence, however, is relevant

6

only to the likelihood of confusion analysis, not the threshold question of whether the mark is inherently distinctive. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 281 (6th Cir. 1997). Even a strong showing regarding actual confusion cannot be relied upon to remedy a lack of inherent distinctiveness on the threshold question. This case demonstrates precisely why that is so. People are often confused as to the source of goods, but not all this confusion is actionable. If a potential subscriber cannot remember whether it's the "New York Times" or the "New York Post" that publishes the Sunday Book Review, it may be evidence that confusion is likely to result from the respective names. As a threshold matter, however, there is no cause of action unless "New York Times" has at least a "suggestive" level of inherent distinctiveness. If every instance of someone not remembering whether she had read a particular article in the "New York Times," "New York Post," "New Yorker," or "New York Magazine" was strong evidence of trademark infringement, the federal courts would have time for little else. Fortunately, since the place name "New York" is merely "geographically descriptive" in trademark jurisprudence, any such suit would fail the threshold inquiry and not reach the likelihood of confusion analysis. *Leelanau Wine Cellars Ltd. V. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007). Plaintiff's mark is geographically descriptive and descriptive of its merchandise, but Plaintiff here fails to satisfy its burden to show the "White of Dublin" mark is inherently distinctive for a bridal boutique. Thus, this Court does not reach the likelihood of confusion analysis.

White is a "common, frequently used word" the use of which is essential to bridal gown vendors describing their wares. There is nothing in Plaintiff's use of the word "white" in the bridal industry that is "unique enough to warrant trademark protection." *Wynn Oil Co.*, 839 F.2d at n.4. This is not to say that a mark containing the word "white" or just the word "white" itself

could never be distinctive enough to warrant trademark protection.  In the context of selling bridal attire, however, this Court finds Plaintiff's use of the word "white" is not a "suggestive mark," nor otherwise inherently distinctive.

### B. Plaintiff's Mark Is Descriptive and Has No Demonstrated Secondary Meaning

Since Plaintiff's mark is neither fanciful, nor arbitrary, nor suggestive, it must be either "descriptive" or "generic."  *Tumblebus Inc.*, 399 F.3d at 761.  Generic marks receive no protection, while descriptive marks "are not 'inherently distinctive,' but can become protectable by developing a secondary meaning."  *Id*.  The Fifth Circuit has long held that "[a] mark or trade dress is descriptive if it 'identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients," a holding that does not conflict with the law of the Sixth Circuit.  *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 540 (5th Cir. 1998), *abrogated on other grounds*.  Consideration of the word "white" with regard to both that definition of "descriptive" and the literal definition of "describe" demonstrates that "white" is descriptive.  The question now becomes whether Plaintiff's "White of Dublin" mark has acquired a secondary meaning.  While Plaintiff stated its mark had become recognized in the local bridal industry, it did not present the alternative argument that its mark was descriptive but still protectable because it had acquired secondary meaning.  Nevertheless, this Court must consider that possibility.

In the Sixth Circuit, "[t]o acquire a secondary meaning in the minds of the buying public . . . the article [of merchandise in question] must proclaim its identification with its source, and not simply stimulate inquiry about it."  *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991).  The Sixth Circuit applies a seven-factor test to determine whether a descriptive mark has acquired a secondary meaning, a test which considers: (a) direct consumer testimony; (b)

8

consumer surveys; (c) exclusivity, length, and manner of use; (d) amount and manner of advertising; (e) amount of sales and number of customers; (f) established place in the market; and (g) proof of intentional copying. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 at n. 14 (6th Cir. 2002). Since Plaintiff chose to forego this argument, however, there is insufficient evidence in the record for the Court to apply this test. The lack of facts adduced on most of these factors would render an adjudication of the question speculative at best. The burden for proving a mark is sufficiently distinctive to warrant protection rests with the party seeking relief, here, the Plaintiff. Plaintiff, by neglecting to brief the Court on acquisition of secondary meaning or provide the Court with sufficient evidence to consider the question of secondary meaning, has failed to satisfy its burden. The Court, thus, finds Plaintiff's mark is descriptive and not entitled to protection.

### C. Temporary Restraining Order of Defendant's Previous Stylized Mark

Although Plaintiff's plain mark is not sufficiently distinctive to merit trademark protection, the Court did preliminarily find that Defendant's "The White Dress Co." stylized mark or logo is substantially similar to Plaintiff's "White of Dublin" stylized mark. Considering that the parties are located within 500 meters of one another, are in direct competition, and utilize many of the same means of advertising, the Court found Defendant's stylized mark likely to cause confusion among consumers and possibly injure Plaintiff's reputation. The stylized marks are reproduced below:

**PLAINTIFF'S STYLIZED MARKS**



**DEFENDANT'S STYLIZED MARKS**





Since the issuance of the Temporary Restraining Order, however, Defendant has discontinued use of that stylized mark. Nevertheless, Plaintiff requests the Court permanently enjoin Defendant from using its former stylized mark to prevent it from resuming usage upon expiration of the Temporary Restraining Order. Defendant represented to the Court at the March 27 Hearing that it did not oppose an injunction as to its previously used stylized marks. Thus, for the same reasons relied upon in this Court's previous Order (Doc. 13), the Court finds Defendant's former stylized marks, illustrated above, likely to cause confusion among consumers. Their use would, thus, injure Plaintiff's reputation.[4] Defendant is, hereby, **PERMANENTLY ENJOINED** from using its stylized marks for "The White Dress Co." as they appear in this Opinion & Order. This permanent injunction prevents Defendant from using these marks in any promotion, advertising, signage, or for any other purpose.

At the March 27 Hearing, Plaintiff provided evidence that Defendant had failed to prevent the stylized marks, enjoined by the March 8 TRO, from being used in an article written about Defendant and also that the enjoined marks still appeared in the historical archive on Defendant's website and social media pages. While the Court does not sanction Defendant for violating the TRO, Defendant is **ORDERED** to remove all occurrences of the enjoined marks from the various internet instrumentalities under its control, including from the respective historical archives of those instrumentalities. Any future alleged violation of this Order will result in Defendant having to show cause as to why it should not be found in contempt.

### V. CONCLUSION

Since Plaintiff's mark is, at most, descriptive without a demonstrated secondary meaning, Plaintiff does not have a likelihood of success on the merits of its claims. Thus, Plaintiff cannot

---

[4] The Sixth Circuit holds that once a party demonstrates a likelihood of confusion or risk to reputation, a "finding of irreparable injury ordinarily follows." *Wynn Oil Co.*, 943 F.2d at, 608 (6th Cir. 1991).

demonstrate it is entitled to the extraordinary remedy of an injunction.  Plaintiff's Motion for Preliminary Injunction is **DENIED** insofar as it seeks to enjoin Defendant from using the mark of "The White Dress Co."

Plaintiff's Motion for Preliminary Injunction with regard to Defendant's stylized marks herein illustrated is **GRANTED**.  Defendant is **PERMANENTLY ENJOINED** from using the marks herein illustrated.

**IT IS SO ORDERED.**

       **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: April 5, 2013**